25 C.C.P.A.(Customs)

### UNITED STATES v. MARSHALL FIELD & CO., Inc.

Customs Appeal No. 4085.

Court of Customs and Patent Appeals.
Jan. 24, 1938.

Joseph R. Jackson, Asst. Atty. Gen., and Charles D. Lawrence, Sp. Asst. to Atty. Gen., both of New York City, for the United States.

James W. Bevans, of New York City, for appellee.

Before BLAND, Acting Presiding Judge, and HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This appeal relates to an importation by appellee of certain cotton cloth at the port of New York on March 27, 1934. The cloth was assessed with ordinary duty under the provisions of the Tariff Act of 1930, 46 Stat. 590, see 19 U.S.C.A. § 1001 et seq., and in addition thereto the collector of internal revenue, purporting to act under the provisions of section 15(e) of the Agricultural Adjustment Act of May 12, 1933, 48 Stat. 39, see 7 U.S.C.A. § 615(e) collected, while the merchandise was in customs custody, a so-called "compensating tax," levied against such merchandise as provided in said act.

Appellee made no complaint against the regular duties assessed under the Tariff Act of 1930, but filed a protest with the collector of customs at New York against the assessment of said compensating tax. The protest was amended from time to time, and in its final form it was alleged that: "No compensating tax should be levied for the reason that the Agricultural Adjustment Act is unconstitutional in that it is not within the power of the Federal Government under the Commerce Clause of the Constitution, and is not for revenue."

The report of the collector, transmitting the protest to the Customs Court, was introduced in evidence and reads as follows:

"Feb. 15, 1935.

"Respectfully referred to the U. S. Customs Court for decision. This protest is lodged against the assessment of the 'Compensation Tax' attaching to imported processed or manufactured commodities enumerated in the 'Agricultural Adjustment Act', approved May 12, 1933. The matter of assessment and collection of the tax are functions solely vested in the Bureau of Internal Revenue under section 19(a) of said Agricultural Adjustment Act, and in no way related to the rates and amount of duty assessed and collected as Customs duties under the Tariff Act of 1930. Note section 15(e) of said Agricultural Act and Articles 13 to 20, inclusive, of the Bureau of Internal Revenue Regulations No. 81 related thereto.

"Review and modification of the payment in question are not subjects for consideration by a Collector of Customs or by your Court, under the authority set forth in sections 514 and 515 of the said present Tariff Act [19 U.S.C.A. §§ 1514, 1515] as the taxable amount is determined by the Internal Revenue Collector and is paid to that officer. If dissatisfied with the demand and payment in question, it would seem that the appeal for remission or refund should be addressed to the Commissioner of Internal Revenue. Note principle underlying T. D. 30355. Note also T. D. 43740 affirmed in T. D. 44851 and Abstract 17981. The protest was received more than 60 days subsequent to the date of payment of the tax complained of. Note record of date of payment stamped on the face of the entry."

On June 12, 1935, the government moved to dismiss the protest on the ground that the United States Customs Court had no jurisdiction in the premises, for the reasons stated in the collector's report.

On September 18, 1935, this motion was denied upon the authority of Faber, Coe & Gregg, Inc., v. United States, 19 C.C.P.A., Customs, 8, T. D. 44851.

It appears from the decision of the Customs Court that the case was submitted for final decision upon the record on November 14, 1935, and that both sides were given the privilege of filing briefs, concurrently, within thirty days after the rendition of the decision of the Supreme Court of the United States in the case of United States v. Butler et al., then pending, in which the constitutionality of said Agricultural Adjustment Act and the levying of certain processing taxes thereunder was in issue. Decision was finally rendered in said case by the Supreme Court on January 6, 1936, holding said act to be unconstitutional. United States v. Butler et al., 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

The Act of Congress approved August 24, 1935, 49 Stat. 750, entitled "An Act To amend the Agricultural Adjustment Act, and for other purposes," contained section 21(d), added by section 30, 49 Stat. 770, 7 U.S.C.A. § 623 note, hereinafter referred to. On May 11, 1936, it appears from the decision of the trial court, the government filed a second motion to dismiss the protest upon the ground of noncompliance by appellee with said section 21(d).

There seem to have been no other proceedings in the case, other than extensions of time for filing briefs, until July 8, 1936, when the government filed a third motion to dismiss the protest, upon the ground that by the enactment of title 7 of the Revenue Act of 1936, §§ 901–917, 7 U.S.C.A. §§ 623 note, 644–659, the Customs Court had no jurisdiction of the case.

Sections 15(e), 16, and 19(a) of said Agricultural Adjustment Act, 48 Stat. 39–41, see 7 U.S.C.A. §§ 615(e), 616, 619(a), read as follows:

"Sec. 15. (e) During any period for which a processing tax is in effect with respect to any commodity there shall be levied, assessed, collected, and paid upon any article processed or manufactured wholly or in chief value from such commodity and imported into the United States or any possession thereof to which this title applies, from any foreign country or from any possession of the United States to which this title does not apply, a compensating tax equal to the amount of the processing tax in effect with respect to domestic processing at the time of importation: Provided, That all taxes collected under this subsection upon articles coming from the possessions of the United States to which this title does not apply shall not be covered ino the general fund of the Treasury of the United States but shall be held as a separate fund and paid into the Treasury of the said possessions, respectively, to be used and expended by the governments thereof for the benefit of agriculture. Such tax shall be paid prior to the release of the article from customs custody or control."

"Sec. 16. (a) Upon the sale or other disposition of any article processed wholly or in chief value from any commodity with respect to which a processing tax is to be levied, that on the date the tax first takes effect or wholly terminates with respect to the commodity, is held for sale or other disposition (including articles in transit) by any person, there shall be made a tax adjustment as follows:

"(1) Whenever the processing tax first takes effect, there shall be levied, assessed, and collected a tax to be paid by such person equivalent to the amount of the processing tax which would be payable with respect to the commodity from which processed if the processing had occurred on such date.

"(2) Whenever the processing tax is wholly terminated, there shall be refunded to such person a sum (or if it has not been paid, the tax shall be abated) in an amount equivalent to the processing tax with respect to the commodity from which processed.

"(b) The tax imposed by subsection (a) shall not apply to the retail stocks of persons engaged in retail trade, held at the date the processing tax first takes effect; but such retail stocks shall not be deemed to include stocks held in a warehouse on such date, or such portion of other stocks held on such date as are not sold or otherwise disposed of within thirty days thereafter. The tax refund or abatement provided in subsection (a) shall not apply to the retail stocks of persons engaged in retail trade, held on the date the processing tax is wholly terminated."

"Sec. 19. (a) The taxes provided in this title shall be collected by the Bureau of Internal Revenue under the direction of the Secretary of the Treasury. Such taxes shall be paid into the Treasury of the United States."

Sections 901, 902, 903, 905, 910, and 913(a) of title 7 of the Revenue Act of 1936, 7 U.S.C.A. §§ 623 note, 644, 645, 647, 652, 655(a), read as follows:

"Sec. 901. *Repeals.*

"Sections 21(d), 21(e), and 21(g) of the Agricultural Adjustment Act, as amended, are hereby repealed."

"Sec. 902. *Conditions on Allowance of Refunds.*

"No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under the Agricultural Adjustment Act, unless the claimant establishes to the satisfaction of the Commissioner in accordance with regulations prescribed by him, with the approval of the Secretary, or to the satisfaction of the trial court, or the Board of Review in cases provided for under section 906, as the case may be—

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of such Act, or in the price of any article processed from any commodity with

respect to which a tax was imposed under such Act, or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof; or

"(b) That he has repaid unconditionally such amount to his vendee (1) who bore the burden thereof, (2) who has not been relieved thereof nor reimbursed therefor, nor shifted such burden, directly or indirectly, and (3) who is not entitled to receive any reimbursement therefor from any other source, or to be relieved of such burden in any manner whatsoever."

"Sec. 903. *Filing of Claims.*

"No refund shall be made or allowed of any amount paid by or collected from any person as tax under the Agricultural Adjustment Act unless, after the enactment of this Act, and prior to July 1, 1937, a claim for refund has been filed by such person in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. All evidence relied upon in support of such claim shall be clearly set forth under oath. The Commissioner is authorized to prescribe by regulations, with the approval of the Secretary, the number of claims which may be filed by any person with respect to the total amount paid by or collected from such person as tax under the Agricultural Adjustment Act, and such regulations may require that claims for refund of processing taxes with respect to any commodity or group of commodities shall cover the entire period during which such person paid such processing taxes."

"Sec. 905. *Jurisdiction of Courts.*

"Concurrent with the Court of Claims, the District Courts of the United States (except as provided in section 906 of this title) shall have jurisdiction of cases to which this title applies, regardless of the amount in controversy, if such district courts would have had jurisdiction of such cases but for limitations under the Judicial Code, as amended, on jurisdiction of such courts based upon the amount in controversy. The United States Customs Court shall not have jurisdiction of any such cases."

"Sec. 910. *Liability of Collectors.*

"No collector of internal revenue or customs, or internal revenue or customs officer or employee, shall be in any way liable to any person for any act done by him in the assessment or collection of any amount as tax under the Agricultural Adjustment Act, or for the recovery of any money exacted by or paid to him and paid into the Treasury, in performance of his official duties under the provisions of such Act, or if such collector or officer acted under the direction of the Secretary or other proper officer of the Government."

"Sec. 913. *Definitions.*

"When used in this title—

"(a) The term 'tax' means a tax or exaction denominated a 'tax' under the Agricultural Adjustment Act, and shall include any penalty, addition to tax, additional tax, or interest applicable to such tax."

It will be unnecessary to quote or discuss section 21(d) of the Act of August 24, 1935, for the reason that said section was repealed by section 901 of said title 7 of the Revenue Act of 1936, 49 Stat. 1747, 7 U.S.C.A. § 623 note.

On December 16, 1936, the Customs Court rendered its decision, in which it denied the motions of the government to dismiss the protest and sustained said protest. The principal opinion was written by Judge Kincheloe, and separate concurring opinions were written by Judges Tilson and Dallinger.

Judge Tilson concurred in the opinion of Judge Kincheloe, and expressed some additional views. Judge Dallinger concurred in both of the opinions of his associates, and expressed some views in addition thereto.

Judgment was entered accordingly, and the government has appealed to this court.

The Customs Court held that title 7 of the Revenue Act of 1936 undertook to amend an unconstitutional act, and held that said title was unconstitutional and void upon the following grounds, as stated in the opinion of Judge Kincheloe:

"We therefore hold that the whole of said title 7 is unconstitutional, null, and void because, first, it does not cure the infirmities of the original Agricultural Adjustment Act, which was the basis of the decision in the Butler Case, supra; second, because said title 7 of said tax act does "not affect the rights of the" plaintiff herein; third, because said title 7 is an effort to effectuate a proceeding under a law already held unconstitutional, and affords plaintiff no adequate remedy at law; fourth, it violates the Fifth

Amendment to the Constitution of the United States in that, in our judgment, it deprives this plaintiff of his property (the compensating tax the subject of this controversy), without due process of law; and fifth, that it does not and cannot ratify or confirm an unconstitutional act of Congress. This motion to dismiss is hereby also denied and exception to this ruling is hereby given to the Government. We think it is obvious that if title 7 is unconstitutional, section 905 of the same must fail with the rest of the title. The attempt to divest this court of its jurisdiction in said section is inseparably connected with all the other sections of said title, and cannot stand alone, and we so hold. When the plaintiff herein paid the compensation tax (which we have already held as a duty), it already had a well-defined tribunal to which it could go to recover same if illegally exacted, namely, the United States Customs Court, which, with its predecessor in name, the Board of General Appraisers, has been a court of forty-six years' standing, and which, in our judgment, can not be divested of its jurisdiction by any attempted amendment of an unconstitutional act. Also, in case of an unfavorable decision by this court, it then could appeal to the United States Court of Customs and Patent Appeals, and if necessary, by praying a writ of certiorari to the Supreme Court of the United States."

The Customs Court also held section 15 (e) of the Agricultural Adjustment Act unconstitutional, null, and void.

In Judge Kincheloe's opinion it is further stated:

"So far as we are able to learn, there is no denying the fact that the importer in the instant case did pay the compensating tax to the collector of internal revenue, and there is no dispute as to the amount paid. Also, there is no question but what it has not recovered from the Government any of said tax and that said tax was paid into the Treasury of the United States. The entry in this case showed that it was paid to the collector of internal revenue and the date of its payment is stamped thereon. The collector in his letter of transmittal stated that the tax was paid to the collector of internal revenue and that more than sixty days had elapsed from the payment of same to the time the protest was filed; also, that this entry was liquidated August 21, 1934, and the protest was filed September 22, 1934, which was within sixty days immediately following liquidation by the collector. So, the protest was filed in time pursuant to section 514 of the Tariff Act of 1930. Also, there is no question but what this tax is not a processing tax but is a tax on imported articles. The Treasury Department so treated same as a compensating tax because article 14, regulation 81, reads as follows:

"Art. 14. Nature of the Tax.—The compensating tax is not a processing tax but is a tax on imported articles.

"The protest, therefore, is sustained. Judgment will be rendered accordingly."

Judge Tilson, in his concurring opinion, held that section 905 of the Revenue Act of 1936, 7 U.S.C.A. § 647, conferred no jurisdiction, either upon the Court of Claims or the District Courts of the United States, to entertain a suit of an importer for the recovery of compensating taxes paid under the Agricultural Adjustment Act. He further stated:

"Certainly the person who paid a *compensating* tax is not authorized to bring any action for relief therefrom under said section 906 [7 U.S.C.A. § 648] for the plain and obvious reason that said section 906 only provides a remedy for those persons who have paid a tax designated as a *processing* tax, without any mention of or reference to the person who paid a tax designated as a *compensating* tax. Therefore, if said section 905 should be held to divest the United States Customs Court of jurisdiction of cases involving *compensating* taxes, those persons who have paid *compensating* taxes, are, under title 7 of the Revenue Act of 1936, entirely cut off without any remedy or procedure whereby they can recover said tax, for the reason that said section 906 only provides a remedy in case of *processing* taxes, and section 905 only provides a remedy as to *processing* taxes, without any mention or reference in either of said sections to a remedy for those persons who have paid a *compensating* tax. If it be true that said section 905 divests the United States Customs Court of jurisdiction in *compensating* tax cases, then it would appear that the equal protection of the law, guaranteed by the due-process clause of the Fifth Amendment, has been violated by the arbitrary and unequal distinction between those persons who have paid a *processing* tax and those persons whom have paid a compensating tax. * * *

"There are only two kinds of taxes provided for and dealt with in the Agricultural Adjustment Act of 1933 and in title 7 of the

Revenue Act of 1936, to wit: *Processing* taxes and *compensating* taxes. From the foregoing it is, therefore, clear that title 7 of the Revenue Act of 1936 takes away all the former rights and remedies of the plaintiff herein to sue for the return of the *compensating* tax paid by it, and far from providing an adequate substitute remedy, or procedure, provides absolutely no remedy or procedure at all whereby the plaintiff may have a determination of whether or not it is entitled to a refund of the *compensating* tax paid under an unconstitutional law. * * *

"Whether or not title 7, and particularly section 905, of the Revenue Act of 1936, vests or divests the United States district courts of jurisdiction to hear and determine cases involving *processing* taxes is a question which I do not feel this court is called upon to answer in this case. I am convinced, however, that such portions of said title 7, and particularly section 905, as divest or attempt to divest the United States Customs Court of jurisdiction to hear and determine this case, involving a customs duty paid on imported merchandise, violate the equal protection of the law guaranteed by the due-process clause of the Fifth Amendment, and are, therefore, unconstitutional. I, therefore, join my associates in so holding, and, consequently, in denying the third motion to dismiss this suit, and in granting the plaintiff relief."

Judge Dallinger, in his concurring opinion, stated in part:

"Furthermore, neither the amendatory Act of August 24, 1935, [49 Stat. 750], nor the Revenue Act of 1936 either expressly or by implication in any way rescinded or revoked the Government's consent to be sued for the recovery of so-called compensating taxes assessed and collected under said Agricultural Adjustment Act. On the contrary, when said Revenue Act of 1936 was under consideration in the Congress, the proposition to prohibit any right on the part of a taxpayer to sue the United States for a refund of such taxes was made and rejected.

"No question is here raised as to the right of Congress, if it thought such action just and proper, to deprive citizens of any statutory remedy to recover taxes illegally exacted, including the common-law remedy against the tax collector (which latter remedy does not arise from statute law), thus changing the reasonable and just practice in this country for more than one hundred years. As a matter of fact, however, the United States Government for over a century has consented to be sued for the recovery of customs duties illegally exacted, and the reports of the inferior courts as well as those of the Supreme Court abound in decisions involving the recovery by citizens of such illegally collected duties.

"For the above reasons, in my opinion, the first contention of the Government that the United States is not suable as of right is in no way pertinent to the facts herein. * * *

"Finally, title 7 of said Revenue Act of 1936, which by its terms applies only to taxes collected under the illegal and unconstitutional Agricultural Adjustment Act, and which attempts to prevent recovery by the plaintiff of moneys illegally exacted from him as a condition for the release by the Government of his imported merchandise, by applying to a suit already commenced in the United States Customs Court (which court by law has original and exclusive jurisdiction of such cases) a new and arbitrary rule of evidence not susceptible of compliance, and which also attempts to divest said United States Customs Court of its jurisdiction of said suit, is unconstitutional, and therefore null and void."

Before discussing the merits of the controversy before us, we call attention to some inaccuracies in the opinions of two of the judges of the trial court.

The principal opinion by Judge Kincheloe treats title 7 of the Revenue Act of 1936 as an amendment of the unconstitutional Agricultural Adjustment Act. It does not purport to be such, and is in no wise an amendment thereof. The heading of title 7 reads as follows: "Title VII—Refunds of Amounts Collected under the Agricultural Adjustment Act."

We find nothing in any of the provisions found in title 7 either expressly or by implication amending the Agricultural Adjustment Act. In fact, Congress knew of course, at the time of the enactment of said title 7, of the decision in United States v. Butler et al., supra, on January 6, 1936, holding the Agricultural Adjustment Act unconstitutional.

Judge Tilson, in his concurring opinion, stated there were only two kinds of taxes provided for and dealt with in the Agricultural Adjustment Act of 1933, and in title 7 of the Revenue Act of 1936, viz., processing taxes and compensating taxes. This was an error, as there were three kinds

of taxes provided for in said Agricultural Adjustment Act, viz., a processing tax, a compensating tax, and a floor stock tax. The difference between the floor stock tax and the compensating tax was that the former was levied only upon such goods in existence in the United States at the date of the enactment of the act as would have been subject to a processing tax if processed after that time, to an amount equivalent to the processing tax which would have been payable if processing of the same had occurred after the passage of the act, while the compensating tax was laid only upon certain imported goods, and the amount to be paid was to be equal to the amount of the processing tax in effect with respect to domestic processing of similar goods at the time of the importation. The importance of the floor stock tax provision in this controversy will appear hereinafter.

We agree with the trial court that, if title 7 of the Revenue Act of 1936 is unconstitutional, with respect to its provisions other than those of section 905, the latter section should not be held separable from the other provisions, and that in such event said section did not deprive the Customs Court of jurisdiction of the case at bar.

However, in our view, the case of Anniston Manufacturing Co. v. Davis, Collector of Internal Revenue, 301 U.S. 337, 57 S. Ct. 816, 818, 81 L.Ed. 1143, decided May 17, 1937, disposes of the principal contention made by appellee and sustained by the trial court. In our opinion, had the case of Anniston Manufacturing Co. v. Davis, supra, been decided before the decision of the trial court in the case at bar, a different conclusion would have been reached by that court.

The Anniston Mfg. Co. Case, supra, was a suit against the collector of internal revenue to recover certain cotton processing and cotton floor stock taxes levied and collected by the collector of internal revenue. It was contended by appellant therein that sections 901 to 917, inclusive, of title 7 of the Revenue Act of 1936, §§ 623 note, 644–659, were unconstitutional. In its opinion the Supreme Court stated:

"Title VII, sections 901–917, of the Revenue Act of 1936 (7 U.S.C.A. §§ 623 note, 644–659) provided a new administrative procedure for the recovery of amounts collected under the Agricultural Adjustment Act. Section 901 (7 U.S.C.A. § 623 note) repealed sections 21(d), 21(e), and 21(g),

of the amendments of 1935 (49 Stat. 771–773). Section 902 (7 U.S.C.A. § 644) prescribed the conditions on which refunds should be made. Section 903 (7 U.S.C.A. § 645) related to the filing of claims. Sections 904 and 905 (7 U.S.C.A. §§ 646, 647) prescribed periods of limitation and provided for the jurisdiction of the District Courts concurrent with the Court of Claims, for the recovery of amounts collected as floor stock and compensating taxes. Section 906 (7 U.S.C.A. § 648) prescribed the procedure on claims for refunds of processing taxes. Section 907 (7 U.S.C.A. § 649) established certain rules of evidence or presumptions to be observed in the administrative proceeding. Section 908 (7 U.S.C.A. § 650) related to allowance of interest. Section 909 (7 U.S.C.A. § 651) denied review of the administrative ruling by any other administrative or accounting officer. Section 910 (7 U.S.C.A. § 652) undertook to free collectors from liability for moneys collected by him and paid into the Treasury in performance of his official duties. Section 913 (7 U.S.C.A. § 655) defined various terms employed. Other sections laid down administrative rules not requiring attention in the present discussion.

"First.—Petitioner contends that at the time it brought this suit it had a vested right of action against the collector to recover the amounts exacted under statutory provisions held to be invalid; that this right of action could not be destroyed without violating the Fifth Amendment; that the collector was personally liable for the amounts collected and that section 910 which attempted to destroy that liability is unconstitutional.

"The government answers that the instant case 'does not require a decision as to the power of Congress to withdraw suit entirely, both against the Collector and against the Government'; that Congress 'has left a remedy against the Government which is fair and adequate in every respect.' We agree with the government's contention that if the administrative remedy is fair and adequate, other questions with respect to the liability of the collector and the validity of section 910 need not now be considered."

We do not consider the statement in the above quotation that, under section 905, supra, the District Courts, concurrent with the Court of Claims, have jurisdiction of suits for the recovery of amounts collected as compensating taxes, as determinative of that issue. That question was not before

the court, and its expression in that respect must be regarded as obiter.

However, the constitutionality of title 7 with respect to floor stock taxes was directly involved, and with respect thereto the court said: *"With respect to floor stock taxes, no serious question is presented as to the adequacy of the remedy. The remedy by suit is expressly preserved. If the Commissioner refuses refund, suit may be brought against the United States in the Court of Claims or in the District Court for the recovery of the amount claimed to have been illegally exacted. Section 905 (7 U. S.C.A. § 647)."* (Italics ours.)

If, therefore, jurisdiction is, by section 905, vested in the United States District Courts or the Court of Claims, or both, in suits for the recovery of compensating taxes, there can be no question, we think, as to the adequacy of the remedy provided, and title 7 must be regarded as a valid enactment and a legal transfer of jurisdiction of cases involving compensating taxes from the United States Customs Court to the United States District Courts or the Court of Claims, or both.

We can see no difference in principle between floor stock taxes and compensating taxes, in so far as suits for their recovery are concerned.

While it is true, as pointed out by appellee's counsel, that the procedure provided for by title 7 is the normal, ordinary procedure for the recovery of internal revenue taxes illegally levied, and is not the normal procedure for the recovery of taxes paid as duties, it clearly was competent for Congress to change such procedure as it saw fit.

A majority of the members of the United States Customs Court held, however, that, even though title 7 be valid with respect to processing taxes, nevertheless so much of section 905 as attempts to divest the United States Customs Court of jurisdiction to hear and determine the case at bar violates the equal protection of the law guaranteed by the due process clause of the Fifth Amendment and is unconstitutional. If this be true, of course the Customs Court retained jurisdiction of the case, notwithstanding the other provisions of said title 7.

Judges Tilson and Dallinger in their concurring opinions held that by its terms section 905 confers no jurisdiction upon the United States District Courts or the Court of Claims for the recovery of amounts paid as compensating taxes. Judge Dallinger also held that the United States has neither expressly nor by implication rescinded or revoked its consent to be sued for the recovery of compensating taxes assessed and collected under the Agricultural Adjustment Act, and that, for that reason, the contention of the government that the United States is not suable as of right has no application to the case at bar.

The only jurisdiction which the Customs Court ever had for the recovery of any tax paid under the provisions of the Agricultural Adjustment Act was of suits for the recovery of compensating taxes. Clearly it was of such suits that Congress intended to deprive the Customs Court of jurisdiction, for that court never had any jurisdiction over suits for the recovery of processing or floor stock taxes. We cannot ascribe to Congress an intention to deprive the Customs Court of a jurisdiction which it had never possessed.

It is certain that title 7 embraces compensating taxes, for section 902, 7 U.S.C.A. § 644, provides that "No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as *tax* under the Agricultural Adjustment Act," etc. (Italics ours.) The word "tax" is defined in section 913 of title 7, 7 U.S.C.A. § 655, as "a tax or exaction denominated a 'tax' under the Agricultural Adjustment Act." Clearly title 7 embraces compensating taxes, even though they have, for customs purposes been regarded as duties, which is a form of tax.

We also call attention to section 910 of title 7, 7 U.S.C.A. § 652, wherein it is provided that "No collector of internal revenue or *customs,* or internal revenue or *customs* officer or employee" shall be personally liable for taxes paid under the Agricultural Adjustment Act, indicating that Congress intended to include compensatory taxes in title 7. (Italics ours.)

We now come to a consideration of the questions, first, assuming that section 905, 7 U.S.C.A. § 647, does not vest in the Court of Claims or the United States District Courts jurisdiction of suits of the character of that before us, whether or not the government has withdrawn its consent to be sued for the recovery of amounts paid as compensating taxes; and, second, whether

the government may withdraw such consent, even though it has, by imposing such taxes, violated the constitutional rights of a citizen.

With respect to the contention that the government has not withdrawn its consent to be sued in this class of cases, with the assumption above stated, we inquire in what court the United States has consented to be sued. Clearly it has withdrawn its consent to be sued in the United States Customs Court, and, if no such jurisdiction has been conferred upon the District Courts or the Court of Claims, Congress has not vested in any court jurisdiction over such cases. True, Judge Dallinger has pointed out the legislative history of title 7, wherein it is shown that, when the Revenue Act of 1936 was before Congress, a proposal to prohibit any right on the part of a taxpayer to sue the United States for a refund of taxes paid under the Agricultural Adjustment Act was rejected.

Title 7 of the Revenue Act of 1936 was reported by the Finance Committee of the Senate as an amendment to H.R. 12395, which became said Revenue Act of 1936. The House of Representatives accepted section 905 without modification, and in fact all of title 7 as reported by the Senate Committee was agreed to in substantially the form in which it now appears in said Revenue Act. We quote from said Senate Committee report the following:

"* * * The invalidation of the Agricultural Adjustment Act by the decision in the Butler Case has given rise to possible claims for approximately $960,000,000 which has been collected under that act. This amount consists of approximately $850,000,000 in processing taxes; $98,000,-000 in floor-stocks taxes; and $12,000,000 in compensating taxes. * * *

"The revision of the provisions of section 21(d) contained in title VII adheres to the fundamental principle of equity applicable in respect to claims for refund, namely, that the claimant secure a refund only with respect to the amount of tax of which he bore the economic burden. However, the procedure in the handling of these claims has been modified so as to diminish insofar as possible the administrative burden involved in passing on them. The greater number of claims which may be filed relate to claims for *compensating* taxes and floor-stocks taxes. In these cases the issue of fact as to whether or not the claimant bore the economic burden of the tax will be relatively simple. The bill therefore proposes that such claims shall be handled in the same manner as any other claims for refund under existing law. The claimant will merely present his claim to the Bureau of Internal Revenue, and it will be passed on without formal hearing. If the claimant ·is dissatisfied with the decision of the Commissioner, he will then have recourse to the district court or the Court of Claims. [Italics ours.] * * *

"Section 902 adheres to the basic principle that no refunds may be made of amounts collected under the Agricultural Adjustment Act, except to the extent to which the claimant establishes to the satisfaction of the Commissioner of Internal Revenue, or to the satisfaction of the trial court, as the case may be, that he bore the economic burden of such amounts. The reference to the trial court is necessary, since *in all cases* where the claimant is dissatisfied with the determination of the Commissioner, except with respect to processing taxes, as defined in section 913, the claimant *will have recourse to the district courts or the Court of Claims.* Whether the claim is acted on by the Commissioner or such courts, the burden of proving that the tax was not passed on will be on the claimant. [Italics ours.] * * *

"Section 905 contains provisions now incorporated in section 21(d), relating to the jurisdiction of the district courts. *The district courts and the Court of Claims will have jurisdiction of all cases relating to amounts collected under the Agricultural Adjustment Act, except amounts collected as processing taxes.* With respect to processing taxes, a special procedure is provided in section 906 of the bill. The $10,000 limitation on the jurisdiction of the district courts which would otherwise be applicable, is dispensed with in order to relieve the Court of Claims of congestion which would otherwise result. [Italics ours.]"

From the foregoing it is clear that, if legislative history may be resorted to as an aid in the construction of section 905, Congress intended to deprive the Customs Court of jurisdiction of suits to recover amounts paid as compensating taxes, and to vest jurisdiction over such suits in the United States District Courts and the Court of Claims.

Surely legislative history may not be resorted to for the purpose of establishing

that Congress did not intend to withdraw its consent to be sued for the recovery of compensating taxes, without also considering such legislative history to determine in what courts Congress intended to vest such jurisdiction.

If section 905 be regarded as unambiguous, to be construed without the aid of its legislative history, it must be held that the government, by virtue of its provisions, has either withdrawn its consent to be sued for the recovery of amounts paid as compensating taxes or that jurisdiction of such suits is vested in the Court of Claims, and possibly also in the District Courts of the United States. There is certainly nothing ambiguous in the provision of section 905, 7 U.S.C.A. § 647, reading, "The United States Customs Court shall not have jurisdiction of any such cases."

█ If jurisdiction over cases for the recovery of amounts paid as compensating taxes is, by section 905, vested in either the Court of Claims or the District Courts of the United States, or both, then the motion of the government to dismiss the protest in the case at bar should have been granted by the Customs Court. If, on the other hand, such jurisdiction is not vested in said courts, then Congress has conferred upon no court jurisdiction over such cases, and for that reason the Customs Court should have dismissed appellee's protest, unless it should be held that section 905 is unconstitutional because no judicial remedy has been provided for the recovery of amounts paid as compensating taxes.

Appellee does not seriously challenge the right of the government to withdraw its consent to be sued, and concedes that such consent may affect any stage of a suit prior to the rendering of a final judgment in the case.

In the case of Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 844, 78 L.Ed. 1434, the court said:

"Contracts between individuals or corporations are impaired within the meaning of the Constitution whenever the right to enforce them by legal process is taken away or materially lessened. [Citing cases] A different rule prevails in respect to contracts of sovereigns. Compare Principality of Monaco v. Mississippi, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282. 'The contracts between a Nation and an individual are only binding on the conscience of the sovereign and have no pretensions to compul-

sive force. They confer no right of action independent of the sovereign will.' [citing Hamilton, The Federalist, No. 81.] The rule that the United States may not be sued without its consent is all-embracing. * * *

"When the United States creates rights in individuals against itself, it is under no obligation to provide a remedy through the courts. United States v. Babcock, 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011. It may limit the individual to administrative remedies. Tutun v. United States, 270 U.S. 568, 576, 46 S.Ct. 425, 70 L.Ed. 738. And withdrawal of all remedy, administrative as well as legal, would not necessarily imply repudiation. So long as the contractual obligation is recognized, Congress may direct its fulfillment without the interposition of either a court or an administrative tribunal."

In the case of Kline et al. v. Burke Construction Company, 260 U.S. 226, 234, 43 S.Ct. 79, 82, 67 L.Ed. 226, 24 A.L.R. 1077, the court said:

"Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution. Turner v. Bank of North America, 4 Dall. 8, 10, 1 L.Ed. 718; United States v. Hudson & Goodwin, 7 Cranch 32, 3 L.Ed. 259; Sheldon v. Sill, 8 How. 441, 448, 12 L.Ed. 1147; Stevenson v. Fain, 195 U.S. 165, 25 S.Ct. 6, 49 L.Ed. 142. The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it. Mayor of Nashville v. Cooper, 6 Wall. 247, 252, 18 L.Ed. 851. And the jurisdiction having been conferred may, at the will of Congress, be taken away in whole or in part; *and if withdrawn without a saving clause all pending cases though cognizable when commenced must fall.* The Assessors v. Osborne, 9 Wall. 567, 575, 19 L.Ed. 748. A right which thus comes into existence only by virtue of an act of Congress, and which may be withdrawn by an act of Congress after its exercise has begun, cannot well be described as a constitutional right." (Italics ours.)

It is unnecessary to pursue this subject further. If section 905 be construed as de-

priving the United States Customs Court of jurisdiction over the instant and similar cases, and failing to confer such jurisdiction upon any other court, then it must be held that Congress has withdrawn its consent to be sued in such cases, and this was within the constitutional power of Congress.

 If, on the other hand, section 905 shall be construed, with the aid of its legislative history, as meaning that Congress did not intend to withdraw its consent to be sued in this class of cases, then it must also be held that it was the intent of Congress to deprive the Customs Court of jurisdiction of suits for the recovery of amounts paid as compensating taxes, and to vest such jurisdiction in other courts named in section 905. It is unnecessary here to decide which of the above construc tions should be followed, for under either of them the United States Customs Court was deprived of jurisdiction over the case at bar, and the government's motion to dismiss should have been granted.

 While not necessary to our decision herein, we think it proper to observe that, even if it should be held that the Customs Court had jurisdiction in the case at bar, the protest should have been overruled or dismissed because of failure of appellee to comply with the provisions of section 902 of said title 7. The validity of this section was expressly upheld by the Supreme Court in the Anniston Mfg. Co. Case, supra. Appellee offered no proof whatever in the case at bar that the burden of the compensating tax paid by it and here involved was not shifted through inclusion of the amount of such tax in the price for which it sold the imported merchandise, nor did it offer any evidence that it was impossible to determine whether appellee had absorbed the amount of such tax in the price at which it had sold the imported goods, or had added it to the ordinary price thereof.

This question is very fully discussed in the Anniston Mfg. Co. Case, supra, and the Supreme Court's decision upon this point would be controlling here if we were of the opinion that the Customs Court had jurisdiction of the case at bar.

There are also other provisions of title 7, compliance with which is made necessary before recovery of the amounts paid as taxes embraced in the title may be had, and as to which there is no proof in the record in the case at bar, but there is no occasion for a discussion of these provisions in this opinion.

For the reasons stated herein, the judgment of the United States Customs Court is reversed, and the cause is remanded, with directions to dismiss appellee's protest for want of jurisdiction over the subject matter thereof.

Reversed and remanded.