ART METAL WORKS, INC., Plaintiff, *v.* CUNNINGHAM PRODUCTS CORPORATION and Another, Defendants.

Supreme Court, New York County, April 11, 1930.

*Lorenz, Stumpe & Lorenz* [*John F. X. Finn* and *Page S. Haselton* of counsel], for the plaintiff.

*Leonard Biel* [*Leonard Biel* and *Frank I. Schechter* of counsel], for the defendants.

KRESEL, Referee. For about thirty years the plaintiff, Art Metal Works, Inc., and its predecessors have been in the business of manufacturing and selling metal novelties and metal ware. The

business has been on a very extensive scale, comprising the manufacture and sale of thousands of different kinds of articles. The gross annual sales have been about $5,000,000 a year.

The defendant Cunningham Products Corporation was organized in 1927. It succeeded to the business of the defendant Irving Florman, who conducted that business individually and under the trade name of Irving Florman Company for approximately eight years. Florman is the president of Cunningham Products Corporation, and owns nearly all of its stock. The defendants' business has been comparatively small. The gross sales of Cunningham Products Corporation have been approximately $300,000 a year.

Both parties manufacture cigar lighters and perfume atomizers in the shape of cigar lighters, both articles being produced in pocket and table sizes.

The plaintiff's sales of lighters and atomizers amount to over $3,000,000 annually, while the defendants' sales of those articles are approximately $60,000 a year. The plaintiff has spent very large sums in advertising its products both directly to the public as well as to the trade. The defendants' advertising has been insignificant in comparison.

Plaintiff charges that the defendants are guilty of unfair competition in the conduct of their business, in that they simulate plaintiff's products to such an extent as to mislead the public into buying the defendants' products in the belief that they are buying those of the plaintiff. The plaintiff also charges that the defendants have adopted names for their products so similar to those under which plaintiff's products are known as further to enable the defendants to palm off their products for those of the plaintiff, to the damage of the plaintiff and the detriment of the public.

The evidence discloses a great divergence of claims as to priority of invention and priority in advertising and marketing of the products of the parties. While these considerations are important, they are by no means determinative of the charge of unfair competition. Even a junior in the field may be entitled to protection against the unfair competition of the one who first occupied the field.

### As to Cigar Lighters.

Neither of the parties was a pioneer in the field of manufacturing and marketing cigar lighters. The plaintiff claims, however, to have been the first to manufacture and market what is described as the one-finger-one-motion cigar lighter. This is a mechanical device which, upon pressure with one finger on a lever, lifts the cap covering the wick and automatically ignites it, and then, upon releasing the

finger, the cap automatically extinguishes the flame. Prior thereto there had been on the market what are known as thumb-wheel lighters, that is, lighters requiring the turning of a wheel, usually with the thumb, in order to light them, and then a second and independent motion in order to extinguish the flame and close the lid of the lighter. Dunhill and other well-known manufacturers, as well as the defendants, had theretofore manufactured thumb-wheel lighters. The plaintiff's " Ronson " lighter (the name " Ronson " being derived from the surname of the plaintiff's president, Aronson) came on the market in November, 1926. It embodied the mechanical device of the one-finger-one-motion lighter.

The original model of the plaintiff's " Ronson " lighter was in form pear shaped and somewhat larger than the present models manufactured and marketed by the plaintiff under the names of " Ronson-De-light " and " Princess." The original model was discontinued in July, 1927, when the " Ronson-De-light " was marketed. In October, 1928, the plaintiff marketed a new model of its lighter called the " Princess." Both of these models are one-finger-one-motion lighters.

The defendant Cunningham Products Corporation put on the market in October, 1928, a cigar lighter which it called the " Westminster." This was a one-finger-one-motion lighter. The " Westminster " succeeded a thumb-wheel lighter which the defendant Florman had produced some time prior thereto. Cunningham Products Corporation claims that in February, 1929, it discontinued marketing its " Westminster," and that it then invented a modification of its " Westminster " lighter, calling the new one the " New Yorker." The defendant, however, did not put its " New Yorker " on the market until November, 1929.

Although the " Westminster " concededly was not on the market prior to October, 1928, the defendant Florman claims that he had models of the " Westminster " as early as January, 1927, and that he exhibited such models at the automobile show in New York that month. He claims they were stolen from him at the show. He also claims that he made sketches of lighters, such as the " Westminster," as early as August, 1926. In substantiation of this claim Florman produced a sketch of such a lighter claimed to have been made by him in August, 1926, and to have been sent to himself by registered mail in September of that year. I am not much impressed with this proof. If Florman had invented a one-finger-one-motion lighter and had models thereof in January, 1927, it is strange that, when plaintiff applied for a design patent on its " Ronson-De-light," and obtained one in January, 1928, he made no move to question the plaintiff's right to the patent, nor did he sue the plaintiff for

infringing his invention. Even more significant is the fact that when, on the contrary, the plaintiff sued Florman for infringement of plaintiff's patents, obtained as aforesaid, Florman did not in his answer claim that he had himself invented the one-finger-one-motion lighter. I think, therefore, that his present claim is an afterthought.

If the issue here involved were simply that of priority as between plaintiff's "Ronson" and "Ronson-De-light," on the one hand, and the defendants' "Westminster," on the other hand, I should be inclined to hold that the plaintiff, and not the defendants, first invented the one-finger-one-motion lighter, particularly in view of the fact that the plaintiff produced and marketed its lighter in November, 1926, whereas the defendants' "Westminster" did not appear on the market until October, 1928. But the issue here is not merely one of priority. It is a question of unfair competition. Even though I were satisfied that Florman's sketch and models antedated the marketing of the plaintiff's lighter, nevertheless, if more than two years after the plaintiff had produced and marketed its one-finger-one-motion lighter and by extensive advertising had established a reputation and good will for its product, the defendants produced a similar lighter in imitation of the plaintiff's product, a case of unfair competition by the defendants would still be made out. I find that the plaintiff has proved priority both in invention and marketing of the one-finger-one-motion lighter.

A large number of lighters manufactured by others than the plaintiff or the defendants were produced before me on the theory of proving the prior art. Most of them did not embody the principle of the one-finger-one-motion lighter; and as to the one or two that come near embodying that principle, like the Kaschie No. 9 and Kaschie No. 13, there is no proof that they antedated plaintiff's product, and certainly neither of them resembles the plaintiff's lighters in appearance; one looks like a policeman's club and the other like a shaving stick. Even if there were such resemblance, the defendants could not find in that fact a defense to the plaintiff's claim of unfair competition.

Priority of invention would not, in itself, however, entitle the plaintiff to a monopoly in the field of one-finger-one-motion lighters. I do not understand that in this case the respective patent rights of the parties can be adjudicated. If the plaintiff has a patent on the mechanical operation of the one-finger-one-motion lighter, and the defendants are infringing that patent, the plaintiff must seek its remedy for that in another forum. If, however, the defendants are imitating the plaintiff's product, so as to mislead the ordinary purchaser into buying the defendants' lighter in the belief that he is

buying the plaintiff's, the plaintiff is entitled to protection in this suit. This is exactly what the plaintiff claims.

It claims that the defendants' "Westminster" lighter and its successor, the "New Yorker," are such clear imitations of the plaintiff's "Ronson-De-light" and "Princess" lighters as to enable the defendants to palm off their product for that of the plaintiff.

I am satisfied, from a comparison of the exhibits and upon the whole case, that the defendants' "Westminster" and "New Yorker" lighters are imitations of the plaintiff's "Ronson-De-light" and "Princess" models, not only in functional mechanical details, which, perhaps, the defendants would be entitled to copy, unless the plaintiff is protected therein by patents (*Champion Spark Plug Co. v. Mosler & Co.*, [D. C.] 233 F. 112), but also in non-functional features, such as size, dress, contours and appearance to an extent that the ordinary purchaser would be misled into buying the defendants' lighter, believing that it is the plaintiff's. I am satisfied that, before the defendant produced its "Westminster" and "New Yorker" lighters, the appearance of the plaintiff's "Ronson" and "Ronson-De-light" had become associated in the public mind with the plaintiff as the manufacturer (*Trico Products Corporation v. Ace Products Corporation*, [D. C.] 30 F. [2d] 688), and that the plaintiff had established a good will therein which it is entitled to have protected against imitation.

The evidence shows that the defendants' "Westminster" pocket lighter and "New Yorker" pocket lighter are identical in essential dimensions with those of the plaintiff's "Ronson-De-light" and "Princess" lighters, and the defendants' "New Yorker" table lighter is identical in essential dimensions with those of plaintiff's table atomizer, which is in the shape of a lighter. In my opinion, such identity in measurement is not the result of accident, but of design, to be explained only by the conclusions that the defendants deliberately copied the plaintiff's product. It is a coincidence wholly impossible in the absence of conscious imitation. (*Wesson v. Galef*, [D. C.] 286 F. 621.) Of course, there are slight differences, both in the measurements and in the appearance, between the defendants' lighters and those of the plaintiff. But as was well said in an English case (*Dunhill v. Bartlett & Bickley*, 39 R. P. C. 426, 433, Ch. Div. 1922), "a man who means to deceive wants to get such resemblances as will enable his goods to be sold, and such differences as will provide him with cover when his practice is discovered. On the one hand, he wants to blind the public, and on the other hand he wants to blind the Court."

Such slavish imitation naturally leads to confusion in the public

mind and consequently injury to the plaintiff. While proof of actual deception and injury to plaintiff's business is not necessary for the maintenance of an action to restrain unfair competition, threatened injury being sufficient (*Taendsticksfabriks Aktiebolagat Vulcan* v. *Myers*, 139 N. Y. 364, 367), nevertheless there is evidence of such confusion and injury. A person named Moore, from Nebraska, and another named Triplett, from Montana, having purchased " Westminster " lighters, sent them for repair to the plaintiff, believing that the plaintiff was the manufacturer of the " Westminster." Although an effort was made by the defendants to explain away the Triplett incident, no such effort was made in the case of Moore.

Triplett sent the lighter for repair on December 5, 1928. When called by the defendants as a witness before me on January 31, 1930, Triplett testified that the " Westminster " lighter which the plaintiff produced as having been received from Triplett was not the one that he had sent to the plaintiff. His story is that, while playing pool in a pool room, he won a lighter by paying a quarter and punching a hole on one of those lottery punch boards kept in cigar and pool rooms, although in his letter to the plaintiff he wrote that he had " purchased [the lighter] from a local store; " that he found the lighter did not work, and, though he knew that manufacturers frequently put their names on their products, he did not look to see whether the manufacturer's name was on this lighter, but was advised by a friend to send it to the plaintiff for repair. His description of the lighter he sent fits the plaintiff's lighter. On the contrary, when plaintiff replied to Triplett's letter, it sent him one of its own lighters, and stated that the lighter Triplett had sent " is not of our manufacture but is an infringing imitation thereof." I attach no weight to Triplett's testimony. In my opinion, he was mistaken, and that his mistake arose because of the similarity between the plaintiff's and the defendants' lighters. I believe the lighter he sent for repair was the " Westminster " produced by the plaintiff. To hold otherwise would necessitate a finding that as far back as December, 1928, when the plaintiff wrote to Triplett that the lighter he had sent to it was not of its manufacture, the plaintiff was fabricating evidence. There would be no justification for such a finding.

So marked is the resemblance between the plaintiff's and the defendants' lighters that persons purchasing the defendants' lighter required assurances from the defendants and their salesmen that, if they purchased the defendants' lighter, they would be protected against suits for infringement by the plaintiff. This is strikingly shown by the evidence of Fuller, who insisted upon such a guaranty,

and actually obtained it from the defendants' salesman, Lever, who wrote on the bill evidencing the sale of defendants' lighter to Fuller that " Cunningham Products Corp. would protect Mr. Fuller against patent trouble." The attempt to make it appear that Lever was not defendants' agent was futile. His letterheads with the legend " Agent for the Cunningham Products Corp.," which he used " two or three times " in writing letters to Florman, without any remonstrance by the latter, belie the claim of Cunningham Products Corporation that Lever was not its agent.

I think that the failure of Cunningham Products Corporation clearly to stamp its name on its product, so as to indicate the source of manufacture, is evidence of a consciousness on its part that it was imitating the plaintiff's product and of a desire to keep its identity covered up. I am not impressed with the explanation that there was not room on the defendants' product to impress its name thereon. Katcher, the maker of defendants' dies, from which its lighters were cast, testified that the name could have been put on. When a manufacturer enters upon a field previously occupied by a competitor, it is his duty so to distinguish the articles he makes from those of his rival as to make it unlikely that the public will be deceived, or that the ordinary buyer would be misled into purchasing his goods for those of his competitor. (*Moline Plow Co.* v. *Omaha Iron Store Co.*, [C. C. A.] 235 F. 519.) The defendant did not observe that duty by simply placing a loose direction sheet bearing its name inside of the box, in which the lighter was contained, knowing full well that such direction sheet was easily removed, and would in fact be removed by jobbers.

The defendants did not stop with imitating the non-functional attributes of the plaintiff's product, but even adopted for their lighter the same name which the plaintiff had adopted for its product. I am satisfied that as early as March, 1929, the plaintiff adopted the name " New Yorker " for its table cigar lighter. The base of this lighter was in the form of a skyscraper, and, therefore, the name " New Yorker " was quite appropriate for such a product. This evidence does not depend upon the testimony of Harris alone, but is fully corroborated by that of the draftsman Burchett, whom I consider disinterested. He testified that in March, 1929, he prepared designs and blueprints for the " New Yorker " lighter in the drafting department of the plaintiff, and such blueprints were produced, dated March, 1929, and bearing the name " New Yorker." These " New Yorker " lighters were placed on the market by the plaintiff in August, 1929.

The defendants first placed on the market a " New Yorker " lighter in November, 1929. Claim is made that when the " West-

minster " lighter was discontinued in February, 1929, it was followed by the " New Yorker " lighter, but there is no evidence of any sales by the defendants of any lighters under the name " New Yorker " before November, 1929, some months after the plaintiff's " New Yorker " appeared on the market. There is, in my opinion, no credible evidence to show that the lighters sold by the defendants under the No. 175, earlier in the year 1929, were sales of " New Yorker " lighters. Certainly that name nowhere appears on the invoices or other documents which the defendants have produced in connection with those sales. Defendant Cunningham Products Corporation claims that it advertised its " New York " lighter as early as April, 1929, while it is conceded that the plaintiff's first public advertisement was in September, 1929. But, in the face of the fact that the defendant did not market its " New Yorker " until seven months after this advertisement, and three months after plaintiff had marketed its " New Yorker," I consider the priority in advertising of slight probative value. It is not necessary to go the length of plaintiff's claim that the defendants in some unexplained way surreptitiously obtained information early in 1929 that the plaintiff was working on a new lighter, which it would call the " New Yorker," and that thereupon the defendants, to forestall the plaintiff, inserted the advertisements in the April trade papers.

Moreover, there seems to be no reasonable explanation, other than a purpose to imitate, for the adoption by the defendants of the name " New Yorker." I do not believe the defendant Florman's explanation that he happened to pass the New Yorker Hotel, then being erected, and that it occurred to him that that would be a good name for a lighter. There were plenty of other names the defendants could have adopted for their lighter than the exact name used by the plaintiff. No satisfactory reason appears for the use of this particular name among an almost unlimited choice. (*Lipson* v. *Feigenbaum*, 205 App. Div. 701.)

Defendant Cunningham Products Corporation contends that there is no real competition between it and the plaintiff in the marketing of their respective lighters. It contends that its lighters and those of the plaintiff are not sold in the same stores, and that there is such a marked difference in the prices at which their respective products are sold that it is not likely that any one would buy the defendants' products in the belief that he was buying the plaintiff's. The differences in prices are conceded. Thus the plaintiff's pocket lighter is sold to the consumer at an average price of five dollars apiece, and its table lighter at about ten dollars apiece, whereas the defendants' pocket and table lighters are sold at one dollar apiece. There is evidence, however, that a

number of stores deal in both the plaintiff's and the defendants' lighters, making possible deception of the public. An apt illustration of this is found in the act of the London Luggage Shop, which displayed in its window one of plaintiff's "Ronson-De-light" lighters and one of defendants' "New Yorker" lighters, with a price tag of one dollar and ninety-five cents between the two, with the obvious purpose of luring a purchaser into the store by the attractive appearance of the plaintiff's product and then seeking to palm off the defendants' inferior product, of course, at a cheaper price. Plaintiff's "Ronson-De-light" has never been sold at any such price as one dollar and ninety-five cents.

The fact that defendants are selling their product at a cheaper price than the plaintiff's is sold is no defense to the charge of unfair competition. In selling their lighters at a considerably lower price, the defendants placed a strong temptation in the path of dealers to buy the defendants' lighters and increase their profits by selling them to consumers desiring to purchase the plaintiff's higher price lighters. (*Yale & Towne Mfg. Co.* v. *Alder,* 154 Fed. 37 [C. C. A. 2d Cir.].)

There is evidence of other acts of unfair competition. The defendants' use of boxes in which their lighters were sold, made of material similar in color and texture to those used by plaintiff; the defendants' imitation of plaintiff's slogan in advertising its lighter; the defendants' representation in their literature and upon their product that the product was patented, and that the defendants were the sole manufacturers and patentees, when, in fact, the article was not patented — all point to a deliberate intent on the part of the defendants to take advantage of the plaintiff's good will and to derive therefrom an undeserved profit.

### As to Atomizers.

The contentions of the parties, as to lighters, are in all respects paralleled by their respective claims concerning atomizers. Each party claims to have been the first to invent an automatic perfume atomizer, in the appearance and shape of a lighter, as well as the first to advertise such atomizer and the first to place it on the market. Therefore, much that has been said concerning the parties' claims and actions, in relation to lighters, will apply equally to their claims and actions in respect of atomizers.

The plaintiff's and the defendants' pocket atomizers are similar in mechanical operation, and so strikingly similar in appearance that, but for the cheaper quality of the outer covering of the defendants' product, they may be said to be identical. There certainly are no substantial differences between them which the

casual purchaser would detect. That being so, it is important to determine which of the parties first produced the atomizer, and whether the first producer had so far established a reputation for the product by the time the second producer came on the market as to entitle the first producer to protection against imitations. I am satisfied that, as between the plaintiff and the defendants, the plaintiff was the first producer of the atomizer, that the defendants' is an imitation of the plaintiff's, and that the plaintiff's atomizer had acquired such a reputation in the market as to entitle the plaintiff to protection against the defendants' imitations.

The plaintiff claims to have invented its atomizer prior to September 15, 1928. On that date, plaintiff filed an application for a mechanical patent on its invention. This fixes at least September 15, 1928, as the date of plaintiff's invention. Defendants claim that their employee Geiger invented an atomizer " many years before May 1, 1929," and they produce two models of their atomizer claimed to have been in existence before September 15, 1928. I am not satisfied with the proof in support of the defendants' claim. In the first place, one of these models could not have been in existence before September 15, 1928, since Florman testified that the body of the model was made out of a " Westminster " body, and the proof is conclusive that no " Westminster " lighter was produced by the defendant before September 15, 1928, so there could not have been a " Westminster " body before that date. In the second place, it is significant that, if defendants' atomizer had in fact been invented " many years before May 1, 1929," and if models thereof were in existence prior to September 15, 1928, no application for a mechanical patent on the defendants' atomizer was made prior to June, 1929, some ten months after the plaintiff had filed such an application. I cannot draw from Weidner's testimony the inference defendants seek to have me draw, that the plaintiff stole from Weidner the idea and the mechanical device of the atomizer.

The plaintiff's atomizer came on the market either in December, 1928, or January, 1929, while the defendants' did not come on the market till October or November, 1929.

As in the case of the lighters, so as to atomizers, there is a question of similarity of names under which the parties sell their products. The plaintiff sells its atomizers under the name of " Perfu-Mist," a registered trade-mark which plaintiff applied for in January, 1929, and which was granted to it in August, 1929. At the time of the commencement of this suit, the defendants were selling their atomizer under the name " Perfumay." It is not clear when defendants first adopted the use of that name. Their

first advertisement of it was in September, 1929, and they applied for its registration in October, 1929. In March, 1929, two months after plaintiff had applied for registration of its trade-mark "Perfu-Mist," and after plaintiff had been selling its atomizers under that name, the defendants adopted the name "Parfumist" for its intended atomizer, a note as to the approaching production of which it inserted an advertisement in January, 1929. In March, too, defendants ordered 25,000 seals marked "Parfumist." I am accepting defendants' claim that they never sold any atomizers under the name "Parfumist," but I find it difficult to accept the explanation that the adoption of that name was a mere inadvertence.

On the whole case, I am of the opinion that both in respect of atomizers and lighters the defendants are guilty of unfair competition, and that the plaintiff is entitled to relief.

### LIGHTER-FUEL.

There is no evidence that the defendants are manufacturing or marketing any lighter-fuel. They advertised that such a product would be offered by them for sale, but they abandoned all attempts to manufacture it. The plaintiff can, therefore, take no relief in respect of lighter-fuel.

### AFFIRMATIVE DEFENSE AND COUNTERCLAIM.

At the conclusion of the trial, both sides moved for leave to amend their respective pleadings to conform the same to the proof. Such motions are now granted.

By such amendment of their amended answer, the defendants set up an affirmative defense of acquiescence on the part of the plaintiff to the manufacture and sale by the defendants of lighters under the trade name "New Yorker." This defense is based upon the contention that the plaintiff, through its subsidiary, New Process Metals Corporation, sold to the defendants flints which the defendants used in the manufacturing of their lighters, including the lighter which they sold under the name "New Yorker," and that the plaintiff knew that the defendants were using the flints for that purpose. The claim is without merit. New Process Metals Corporation is not a subsidiary of the plaintiff. It is not owned or controlled by the plaintiff. The plaintiff owns no stock of New Process Metals Corporation, although some of the large stockholders of the plaintiff are, likewise, stockholders of New Process Metals Corporation. There is no evidence that plaintiff acquiesced in the use by the defendants of flints purchased from New Process Metals Corporation in the manufacture of infringing articles. Even if plaintiff itself had sold the sparking metal to

the defendants, it would not follow that such sale would give to the defendants a license to add to the sparking metal other elements and thus manufacture an article infringing upon the plaintiff's rights. (*Westinghouse Electric & Mfg. Co.* v. *Independent Wireless Tel. Co.*, [D. C.] 300 F. 748.)

In addition to this affirmative defense, the defendants also set up a counterclaim for injunctive relief against the plaintiff's use of the trade-marks "Perfumizer" and "New Yorker," claiming that the defendants had a prior right to the use of these trade-marks. For the reasons heretofore assigned, I find that this counterclaim has not been sustained by the defendants' proofs.

The defendants' motions to dismiss are denied, with an exception to each defendant separately. The defendant Florman, being practically the sole stockholder of Cunningham Products Corporation and its president and general manager, is a proper party individually, if not as Irving Florman, doing business as Irving Florman Company, and should be subject to the injunction to be entered.