**S. J. CHARIA & CO.**

v.

**UNITED STATES.**

**C. D. 1642; Protest Nos. 194548–K, 197913–K and 197914–K.**

United States Customs Court
Second Division.

Sept. 30, 1954.

On Motion for Retrial Nov. 30, 1954.

Tompkins & Tompkins, New York City (Allerton deC. Tompkins, New York City, of counsel), for plaintiff.

Warren E. Burger, Asst. Atty. Gen., Mollie Strum, Trial Atty., New York City, for defendant.

Sanford H. Bolz, Washington, D. C., amicus curiae.

Before LAWRENCE, RAO and FORD, Judges.

LAWRENCE, Judge.

This cause of action challenges the decision of the collector of customs at the port of New Orleans in excluding from entry certain cigar lighters, which the plaintiff endeavored to import into the United States.

The act of exclusion was based upon the authority of an order of the President, dated March 17, 1934, 65 Treas. Dec. 659, T.D. 47001, issued in accordance with the provisions of section 337 of the Tariff Act of 1930, 19 U.S.C.A. § 1337, directing the Secretary of the Treasury, through the proper officers, to refuse entry of certain cigar lighters.

The statutes and the Presidential order issued pursuant thereto are here set forth.

Section 337, Tariff Act of 1930:

"Sec. 337. Unfair Practices in Import Trade.

"(a) Unfair Methods of Competition Declared Unlawful.—Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are hereby declared unlawful, and when found by the President to exist shall be dealt with, in addition to any other provisions of law, as hereinafter provided.

"(b) Investigations of Violations by Commission.—To assist the President in making any decisions under this section the commission is hereby authorized to investigate any alleged violation hereof on complaint under oath or upon its initiative.

"(c) Hearings and Review.—The commission shall make such investigation under and in accordance with such rules as it may promulgate and give such notice and afford such hearing, and when deemed proper by the commission such rehearing, with opportunity to offer evidence, oral or written, as it may deem sufficient for a full presentation of the facts involved in such investigation. The testimony in every such investigation shall be reduced to writing, and a transcript thereof with the findings and recommendation of the commission shall be the official record of the proceedings and findings in the case, and in any case where the findings in such investigation show a violation of this section, a copy of the findings shall be promptly mailed or delivered to the importer or consignee of such articles. Such findings, if supported by evidence, shall be conclusive, except that a rehearing may be granted by the commission and except that, within such time after said findings are made and in such manner as appeals may be taken from decisions of the United States Customs Court, an appeal may be taken from said findings upon a question or questions of law only to the United States Court of Customs and Patent Appeals by the importer or consignee of such articles. If it shall be shown to the satisfaction of said court that further evidence should be taken, and that there were reasonable grounds for the failure to adduce such evidence in the proceedings before the commission, said court may order such additional evidence to be taken before the commission in such manner and upon such terms and conditions as to the court may seem proper. The commission may modify its findings as to the facts or make new findings by reason of additional evidence, which, if supported by evidence, shall be conclusive as to the facts except that within such time and in such manner an appeal may be taken as aforesaid upon a question or questions of law only. The judgment of said court shall be final.

"(d) Transmission of Findings to President.—The final findings of the commission shall be transmitted with the record to the President.

"(e) Exclusion of Articles From Entry.—Whenever the existence of any such unfair method or act shall be established to the satisfaction of the President he shall direct that the articles concerned in such unfair methods or acts, imported by any person violating the provisions of this Act, shall be excluded from entry into the United States, and upon information of such action by the President, the Secretary of the Treasury shall, through the proper officers, refuse such entry. The decision of the President shall be conclusive.

\* \* \* \* \* \*

"(g) Continuance of Exclusion.—Any refusal of entry under this section shall continue in effect until the President shall find and instruct the Secretary of the Treasury that the conditions which led to such refusal of entry no longer exist. * * *"

Presidential order, dated March 17, 1934:

*"Unfair competition—Cigar lighters*

"Order of the President dated March 17, 1934, issued under the provisions of section 337, Tariff Act of 1930, prohibits entry of certain cigar lighters.

"Treasury Department,
*April 9, 1934.*

*"To Collectors of Customs and Others Concerned:*

"The following order of the President issued on March 17, 1934, under the provisions of section 337 of the Tariff Act of 1930, excluding the importation into the United States of certain merchandise mentioned in the said order is published for your information and guidance:

"Pursuant to a complaint filed by the Art Metal Works, Incorporated, of Newark, New Jersey, asking relief under the provisions of Section 337, Title III, Part II, of the Tariff Act of 1930, from alleged unfair methods of competition and unfair acts in the importation and sale of certain cigar lighters, the United States Tariff Commission made an investigation and afforded appropriate hearings to parties interested under the provisions of subdivisions (b) and (c) of that Section. On January 4, 1934, copies of the Commission's findings were mailed to importers or consignees. The time for an appeal to the Court of Customs and Patent Appeals for a review of the findings of the Commission has expired without an appeal having been filed.

"By order of the President dated July 6, 1933, under subdivision (f) of Section 337 of the Tariff Act of 1930, certain cigar lighters were forbidden entry into the United States, except under bond. The record of the hearings and findings of the Tariff Commission has established to my satisfaction the existence of unfair methods of competition or unfair acts within the meaning of said Section 337. I therefore direct that you exclude from entry into the United States the following cigar lighters, whether or not attached to or forming parts of or combined with other articles:

"(a) Any cigar lighter having a lighter mechanism consisting of an abradant wheel journaled on top of the lighter receptacle and approximately in the center thereof, with a snuffer positioned on one side of the wheel and a finger piece positioned on the other side of the wheel, the finger piece being designed to raise the snuffer and revolve the wheel when pressure is applied downwardly on the finger piece and to cause the automatic closing of the snuffer and extinguishing of the flame when such downward pressure is released, the lighter mechanism having substantially the appearance of the mechanisms of exhibits 4 or 31 in this investigation.

"(b) Until and including June 11, 1945, cigar lighters patented in United States Letters Patent Reissue No. 19023, except where the importation is made under license of the registered owner of said United States Letters Patent.

"With regard to any merchandise the importation of which is prohibited by the President's order of March 17, 1934, supra, and which merchandise has been released heretofore under bond pending a final decision in the matter, the persons concerned should be called upon to export the said merchandise to a foreign country under customs supervision. If exportation is not effected within 30 days after notice so to do, the bonds covering such mer-

chandise which has not been returned to customs custody should then be transmitted to the United States attorney for the institution of appropriate proceedings.

"In lieu of exportation, the merchandise may be destroyed under customs supervision upon the written request of the importer.

"In the event that any merchandise excluded from entry by the President's order, supra, is offered for entry in your district hereafter, the entry thereof should be refused. In case of doubt as to the admissibility into the United States of any shipment, you should submit a report thereof to the Bureau of Customs for instructions, together with a sample of the merchandise.

"The President's order of March 17, 1934, supersedes the temporary order of the President published in Bureau of Customs circular letter no. 1014, dated July 8, 1933.

> "Henry Morgenthau, Jr.,
> "*Secretary of the Treasury.*"

On May 5, 1945, the President issued a supplemental order, 80 Treas. Dec. 92, T.D. 51238, directing that since Congress extended the life of Reissue Letters Patent No. 19023 for a term of 7 years, from and after the 12th day of June 1945, the date appearing in paragraph (b) of Presidential order, dated March 17, 1934, be changed from June 11, 1945, to June 11, 1952.

At the trial of this case, three witnesses appeared and testified, one on behalf of plaintiff and two for defendant. In addition, the following exhibits were introduced by plaintiff and received in evidence:

Collective exhibit 1—copies of patents.

Exhibit 2—the imported lighter.

Exhibit 3—the imported lighter, disassembled, having the finger piece attached to the receptacle.

Exhibit 4—a complete disassembled lighter, in which the finger piece is not attached to the receptacle.

(The above three lighters are all of the same type.)

Illustrative exhibit 4–A—the finger piece and snuffer of a lighter such as exhibit 2.

Exhibit 4–B—a small metal plate of a lighter.

Exhibit 5—copies of patents.

Illustrative exhibit 6—a Ronson lighter.

Illustrative exhibit 7—a disassembled lighter.

Illustrative exhibit 7–A—parts of illustrative exhibit 7.

Exhibit 8—a letter from the Bureau of Customs, dated March 6, 1953, addressed to plaintiff.

Defendant's exhibits consist of the following:

Exhibit A—a report of the Tariff Commission to the President.

Exhibit B—a letter from the Bureau of Customs, dated May 29, 1952, addressed to collectors of customs.

Exhibit C—a press release.

Exhibit D—a letter from the Bureau of Customs, dated October 14, 1952, addressed to plaintiff.

Exhibit E—a photostat of an advertisement by plaintiff appearing in "Opportunity" magazine.

Exhibit F—a photostat of a price list, issued by plaintiff.

Exhibit G—a picture showing a lighter in use.

It is not disputed that the cigarette lighter, identified as the Tariff Commission's exhibit 4, referred to in T.D. 47001, supra, is represented in these proceedings by illustrative exhibit 6, a Ronson lighter, and illustrative exhibit 7, a disassembled lighter, said to have the same type of operating mechanism as the Ronson lighter.

The issue in this case concerns itself with two contentions, which are set forth in plaintiff's brief as follows:

"* * * (1) that the lighters under protest (represented by Exhibits 2, 3, 4 and 5) do not come

within the Terms of the President's Order of exclusion because they do not simulate the Tariff Commission's Exhibit 4 (represented herein by Ill. Exhibits 6, 7 and Coll. Exhibit 1). In the event the Court overrules our claim on simulation, we then claim (2) that the President has attempted by illegal and improper means to remove time limitations from the life of a patent, and that any law or Presidential order which directly or indirectly has as its objective the removal of time limitations required by the Constitution within which an inventor can exclusively enjoy the rights to his discovery, is unconstitutional, illegal, null and void, being contrary to Article I, Section 8, Subsection 8 of the Constitution of the United States of America."

Exploring the background of the President's order, T.D. 47001, and the various events leading up to the exclusion of the imported lighters, the report (exhibit A) of the Tariff Commission to the President, upon which the exclusion order was based, discloses in unmistakable terms a definite purpose in drafting both paragraphs (a) and (b) in its "Recommendation" to the President.

It appears that, upon the original hearing, the Commission declined to grant protection against unfair simulation. Upon rehearing, however, it decided not only to grant protection against unfair simulation but, in addition, protection against patent infringement.

We quote the following from the findings and recommendation of the Commission on rehearing:

"Statement

"The Commission promulgated its findings in this investigation on October 27, 1933. Being dissatisfied with the findings insofar as they relate to the lighters held not to infringe complainant's patent and also to the subject of simulation, complainant on November 11, 1933, requested a rehearing. * * *

* * * * * *

"Simulation

"In its findings promulgated on October 27, 1933, the Commission made no finding of unfair competition on the score of simulation, because it was not satisfied that Art Metal Works, Inc., was entitled to a monopoly on the designs of its lighters. We furthermore stated that exhibits 10, 14, 20, and 21, which were found not to infringe the patent, 'do not simulate complainant's lighters closely enough to warrant a finding of unfair competition on that score.'

"On the first of these propositions, evidence given at the rehearing and submitted thereafter at the Commission's request satisfies the Commission that complainant has acquired a valuable goodwill in the design of its cigar-lighter mechanism. Complainant has extensively advertised its products, emphasizing a pictorial representation and characterizing the operation of its lighters in certain distinctive ways. The fact that numerous owners of cigar lighters not of complainant's manufacture but having an appearance somewhat similar to complainant's lighters have sent lighters to complainant for repairs is further evidence of the goodwill established by complainant.

* * * * * *

"In view of the Commission's findings respecting the goodwill of the Ronson Co. in the lighter mechanism, the Commission finds that exhibits 8, 11, 13, 16, 18, 19, 23, 29, and 33 unfairly simulate complainant's lighters, and that the importation and sale in the United States of such lighters constitute unfair methods of competition within the meaning of section 337. All these lighters embody the one-finger, one-motion principle of operation which formed the basis of the decision in Art Metal Works, Inc. v. Cunningham Products Corporation and Another, infra, insofar as that decision related to the lighter mecha-

nism. These imported lighters also bear a marked resemblance to the lighters which complainant has extensively advertised and in which complainant has acquired a valuable goodwill. The Commission further finds that the importation and sale in the United States of such simulating lighters have substantially injured and, if permitted to continue, will continue to render substantial injury to the industry of complainant within the meaning of section 337.

\*　\*　\*　\*　\*　\*

"Conclusion

"The Commission reaffirms its findings of October 27, 1933, insofar as they relate to the question of patent infringement, and modifies its findings on the subject of simulation to the extent above indicated.

"Recommendation

"The United States Tariff Commission recommends that the President direct the Secretary of the Treasury to instruct customs officers to exclude from entry into the United States the following cigar lighters, whether or not attached to or forming parts of or combined with other articles:

"(a) Any cigar lighter having a lighter mechanism, consisting of an abradant wheel journaled on top of the lighter receptacle and approximately in the center thereof, with a snuffer positioned on one side of the wheel and a finger piece positioned on the other side of the wheel, the finger piece being designed to raise the snuffer and revolve the wheel when pressure is applied downwardly on the finger piece and to cause the automatic closing of the snuffer and extinguishing of the flame when such downward pressure is released, the lighter mechanism having substantially the appearance ·of the mechanisms of exhibits 4 and 31 in this investigation.

"(b) Until and including June 11, 1945, cigar lighters patented in United States Letters Patent No. 1673727, except where the importation is made under license of the registered owner of said United States Letters Patent. \*　\*　\*"

It is obvious from the foregoing report of the Commission that it was recommending to the President protection not only against infringement of the Ronson patent but as well against unfair simulation of the Ronson lighter.

This is further emphasized by reference to a press release (exhibit C) under date of March 26, 1934, in which the Tariff Commission announced the President's approval of its findings and recommendations as follows:

"The President has approved the findings of the Tariff Commission that cigar lighters of a certain mechanism have been imported and sold in the United States in violation of section 337 of the Tariff Act of 1930 by means of unfair methods of competition or unfair acts and has ordered their exclusion. *By this exclusion order relief is granted both from patent infringement and unfair simulation of certain cigar lighters manufactured in the United States.* The exclusion from entry applies whether or not the lighters are attached to or form parts of or are combined with other articles, such as cigarette cases and table ornaments.

\*　\*　\*　\*　\*　\*

"In the case of cigar lighters patented in United States Letters Patent Reissue No. 19023, the exclusion order will be in force until and including June 11, 1945, except where the importation of lighters covered by this patent is made under licenses of the registered owner of said ˙United States Letters Patent. *There is no date limitation on the other cigar lighters included in the exclusion order.* \*　\*　\*" [Emphasis added.]

It seems reasonable to suppose that if the Presidential order were intended to protect only those lighters which violated the patent referred to in paragraph (b) it would have been unnecessary to incorporate paragraph (a) in the order. If collectors of customs found it important to determine whether an imported lighter infringed the patent described in paragraph (b), they would naturally turn to the patent and examine its terms to see whether or not a given importation was so constructed that it obviously violated the terms of the patent.

With respect to the terms of paragraph (a), however, it outlines in express language the type of cigar lighters, so far as their construction, operation, and appearance are concerned, which must be considered in determining whether a given importation constitutes an unfair practice in trade.

■■ We entertain no doubt whatsoever, for reasons hereinbefore stated, that paragraphs (a) and (b) are separate and independent provisions which in no sense conflict with one another and each of which could be separately invoked in different causes of action, and that the present controversy is predicated not on patent infringement but on unfair competition.

■ It seems not to be disputed that the subject lighter (exhibit 2) possesses the mechanical properties in the general arrangement and design described by the terms of paragraph (a), namely, (1) an abradant wheel journaled on top of the lighter receptacle and approximately in the center thereof, with (2) a snuffer positioned on one side of the wheel, and (3) a finger piece positioned on the other side of the wheel.

Furthermore, it is agreed that in the imported lighter the finger piece is designed to raise the snuffer and revolve the wheel, when pressure is applied to the finger piece, and to cause the automatic closing of the snuffer and the extinguishing of the flame when such pressure is released. It may be added that a visual examination of exhibit 2 confirms the foregoing state of facts.

Plaintiff, however, contends that, by reason of certain operational differences between the imported lighter and the exemplar lighter referred to in paragraph (a), pressure is not applied "downwardly" on the finger piece and that dissimilarity in the "appearance" of the mechanisms has been established.

The language of paragraph (a), to which plaintiff invites particular attention, is as follows, with emphasis added—

"(1) the finger piece being designed to raise the snuffer and revolve the wheel when pressure is applied *downwardly* on the finger piece, and

"(2) the lighter mechanism having *substantially the appearance* of the mechanisms of exhibits 4 or 31 in this investigation."

The allegation of plaintiff that the pressure is not applied *downwardly* on the finger piece in order to raise the snuffer and revolve the wheel we believe to be without merit. The words "downward" and "downwardly" do not, of course, connote a perpendicular motion. An article or thing may be pushed, pressed, dropped, or may fall from a horizontal position at practically any degree and, in so doing, acquire a "downward" motion. It would be difficult to depress an article below a horizontal level without exerting some downward pressure. Lexicographic authorities define the terms as follows:

Webster's New International Dictionary of the English Language (1953)—

"**downward,** *adj.* 1. Moving or extending from a higher to a lower place; tending toward the earth or its center, or toward a lower level; as, the *downward* pull of gravity.

\* \* \* \* \* \*

"**—downwardly,** *adv.* \* \* \*."

Funk & Wagnalls New Standard Dictionary of the English Language (1942)—

"downward, *a.* 1. Descending or tending from a higher to a lower level (literal or figurative); as, the *downward* flow of a river * * *. —downwardly, *adv.*"

The best evidence on this phase of the case is the sample itself, which the court has taken occasion to examine physically as well as visually. From such tests as were made, we find it impossible to operate the subject lighter without exerting a downward motion. We are satisfied, therefore, that not only—in the language of paragraph (a)—does "the finger piece * * * raise the snuffer and revolve the wheel when pressure is applied *downwardly* on the finger piece" but also that the "automatic closing of the snuffer and extinguishing of the flame" results "when such *downward* pressure is released." [Emphasis added.]

We turn our attention now to the further contention of plaintiff that the subject merchandise is not a lighter mechanism "having substantially the appearance of the mechanisms of exhibits 4 or 31 * * *." The words "lighter mechanism" appear in the first clause as well as in the last clause of paragraph (a), supra, and it is fair to assume that those words were used in both instances in the Presidential order with the same connotation. In the first clause, the words "lighter mechanism" are expressly stated to consist "of an abradant wheel journaled on top of the lighter receptacle and approximately in the center thereof, with a snuffer positioned on one side of the wheel and a finger piece positioned on the other side of the wheel." Hence, the *"lighter mechanism* having substantially the appearance of the mechanisms of exhibits 4 or 31 in this investigation" in the last clause of the paragraph must have reference to lighter mechanisms of the same kind as those referred to in the first clause. [Italics supplied.]

Plaintiff has drawn into juxtaposition alleged differences in the operational and internal characteristics of exhibits 2 and 4 and asserts that "The foregoing substantial differences in the appearance of the mechanical arrangements of the two lighters are, we submit, decisive of the issue in this case."

On the other hand, plaintiff frankly admits that other features of these lighters (presumably meaning exhibits 2 and 4) "such as the abradant wheel, the snuffer cap, the pyrophoric element or flint, the wick, the shape or form of the receptacle, etc., are common to many lighters of the abradant wheel type."

While plaintiff would have substantial similarity of appearance of the mechanisms require considerations of the appearance of the internal operational features of a lighter, as well as any other considerations, defendant would have that point determined by "the accepted standards followed in that branch of the law," dealing with unfair competition, and that substantial similarity in appearance should not be resolved from the viewpoint of a mechanical expert but rather upon the observational powers of the average purchaser.

In support of this principle, defendant quotes from Nims on "The Law of Unfair Competition and Trade-Marks," Fourth Edition, volume II, page 1024, as follows:

"Similarity which deceives the critical, well-posted buyer is not the test of infringement. The courts are concerned only with the ordinary casual purchaser, who employs the care usually exercised in transactions, of the sort involved. Where the similarity is of a character to mislead such a person, it is sufficient to give a right to redress.

"This 'ordinary purchaser' has been described by many courts. He includes the unwary. He does not analyze; but merely looks, perhaps hastily. He is 'notoriously careless as to details.' Nice discrimination is neither required nor expected from him. As a rule, he is not specifically familiar with the trademark or with all the characteristic

features of the articles which he desires to buy * * *."

The same authority, at page 1018, briefly describes what the resemblance should be to establish unfair competition, that is—

"* * * such as is calculated to deceive the ordinary buyer making his purchases under the ordinary conditions which prevail in the particular traffic to which the controversy relates. * * *"

At page 1019, it was stated that—

"The test is *not* whether there is a difference which will be recognized, by the purchaser who sees the two competing articles placed side by side, but a difference which will be recognized by the consumer who has no chance to compare, when making his purchase. * * *"

To quote Nims further, at page 1025—

"* * * 'The law is not made for the protection of experts,' * * 'but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous, who, making purchases, do not stop to analyze, but are governed by appearances and general impressions.' It is the tendency to carelessness on the part of buyers that makes unfair competition profitable."

While the foregoing citations relate primarily to alleged violations of trademarks and patent infringements, the principles enunciated therein have appropriate application to the facts of this case.

The views set forth by Nims, supra, are ably supported by a recent decision of the Supreme Court, Special Term, New York County, Part VI, decided November 25, 1953, in Ronson Art Metal Works, Inc., v. Gibson Lighter Mfg. Co., 205 Misc. 155, 127 N.Y.S.2d 786, affirmed with a modification not here important in 283 App.Div. 937, 130 N.Y.S.2d 814. This was an action brought by the manufacturer of Ronson cigar and cigarette lighters to enjoin competitors from using

certain business methods, which were alleged to constitute unfair competition.

It appears from the opinion of the court that the competitors had copied designs, shapes, and sizes of Ronson lighters and had used similar advertising and slogans, which established that the defendants had not taken reasonable means to distinguish their lighters from plaintiff's lighters and, hence, were engaged in unfair competition.

It is of interest to note that the court specifically held in the above-cited case that, notwithstanding the expiration of Ronson's patents, Ronson was, nevertheless, entitled to relief under the law of unfair competition. This holding lends further support to the contention of defendant herein that paragraph (a) survives the expiration of paragraph (b). We quote as follows from the Ronson decision, supra [205 Misc. 155, 127 N.Y. S.2d 788]:

"As plaintiff's patents have all expired, it necessarily follows that the patents themselves give plaintiff no right to relief * * *.

"Where the form, shape, and appearance of a patented article are an integral and essential part of the article as made and sold under the patent, the public, upon the expiration of the patent, has, not only the right to make the article, but, also, the right to make it in the form and shape and with the appearance of the article as made by the patentee or his assignee. Wilcox & Gibbs Sewing Machine Co. v. Kruse & Murphy Mfg. Co., 14 Daly 116, affirmed 118 N.Y. 677, 23 N.E. 1146; Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118; Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73, supra, but even there (i. e. even where form, shape and appearance are such an integral and essential part of the patented article that the public, upon the expiration of the patent, has the right,

not only to make the patented article, but, also, the right to make it in the form and shape and with the appearance which the manufacturer under the patent gave it) every person who undertakes, after the expiration of a patent, to make the patented article in the form and shape and with the appearance of the article as it was manufactured under the patent assumes the burden of using reasonable means to distinguish his articles from the articles manufactured by the patentee in such manner that the public will not be misled into thinking that the products of that person are products of the patentee. [Citing cases.]"

The court concluded "that defendants have not taken reasonable means to distinguish their lighters from plaintiff's lighters in such way that the public will not be misled into thinking that defendants' lighters are lighters made by plaintiff; *that defendants accordingly are engaging in unfair competition; * *."* [Emphasis added.]

Some 23 years earlier, the New York Supreme Court had also granted protection against unfair competition and made it crystal clear that patent protection is not coextensive with protection from unfair competition. See Art Metal Works, Inc., v. Cunningham Products Corp., 137 Misc. 429, 242 N.Y.S. 294. In that case, the court granted an injunction to the patentee, based upon unfair competition against deceptive imitations of the shape and appearance of its lighters. The injunction, however, was granted without regard to any question of patent infringement.

The foregoing considerations lead us to the conclusion that paragraphs (a) and (b) of the Presidential order, supra, are separate and independent provisions which do not impinge upon one another, the former being a safeguard against unfair competition and the latter affording protection against patent infringement, and to the further conclusion that the subject lighters come within the terms of paragraph (a).

We shall now give consideration to the alternative contention of plaintiff "that the President has attempted by illegal and improper means to remove time limitations from the life of a patent, and that any law or Presidential order which directly or indirectly has as its objective the removal of time limitations required by the Constitution within which an inventor can exclusively enjoy the rights to his discovery, is unconstitutional, illegal, null and void, being contrary to Article I, Section 8, clause 8 of the Constitution of the United States of America."

Upon the record before us, we are of the considered opinion that this case is free from any constitutional infirmity.

The contention of plaintiff "that the President has attempted by illegal and improper means to remove time limitations from the life of a patent * *," thereby contravening the terms of Article I, section 8, clause 8 of the Constitution of the United States, is utterly without foundation. That section, so far as pertinent here, reads with emphasis added—

"The Congress shall have Power

* * *

* * * * * *

"To promote the Progress of Science and useful Arts, by securing for *limited Times* to Authors and Inventors the exclusive Right to their respective Writings and Discoveries".

It clearly appears from the foregoing quotation that Congress, through the President, has the constitutional prerogative to grant for "limited times" an exclusive right to an inventor. In other words the Congress has the sole power to grant a patent and to terminate it. In the present instance, the termination date of the patent protected by paragraph (b) of the Presidential order, supra, was duly set by order of the President as June 11, 1945, and subsequently extended to June 11, 1952.

On the other hand, the Unfair Practice Act, section 337 of the Tariff Act of 1930, is an example of the consti-

tutional power of Congress, which is derived from the commerce clause of Article I, section 8, clauses 1 and 3, and reads as follows:

"The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;

\*     \*     \*     \*     \*

"To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes; \*  \*  \*."

As a matter of fact, the Tariff Act of 1930, supra, in its preamble recites that it is "An Act To provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor, and for other purposes", and there can be no question but that Congress has the power to enact legislation prescribing the terms upon which merchandise may be imported into the United States. In other words, no one has a vested right to import merchandise or to a given rate of duty, In re Orion Co., 71 F.2d 458, 22 C.C.P.A., Patents, 149; neither may an aggrieved taxpayer sue the United States without its consent, and, even though consent be given, Congress may, under certain circumstances, withdraw such consent.

In the case at bar, Congress has placed limitations upon the privilege of importing certain articles. If the act of importation violates the unfair competition provisions of section 337, supra, said articles may be excluded from entry. Provision was made, however, whereby hearings may be held before a duly constituted quasi-judicial body, the United States Tariff Commission, and, after its findings and recommendations have been submitted to the President, the latter is authorized to proclaim the conditions upon which certain merchandise may be excluded from entry. That such author-

ity in the instant case was legally delegated to the President is well settled by eminent authorities. J. W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624, and United States v. Marshall Field & Co., Inc., 94 F.2d 210, 25 C.C.P.A., Customs, 308, T. D. 49422.

▮ To the complaint of plaintiff that if paragraph (a) was not terminated when the patent right in paragraph (b) expired this court should take action to that end, it would seem that, so long as the matter was delegated by the Congress to the President, he only can terminate the effective operation of paragraph (a). In other words, if plaintiff be dissatisfied with the inaction of the President in terminating paragraph (a), appropriate steps should be taken to bring the matter to the attention of the Chief Executive with that purpose in view.

A somewhat parallel situation was presented in the case of Cramer v. Arthur, 102 U.S. 612, 26 L.Ed. 259, involving the exchange value of currency expressed in standards proclaimed by the Director of the Mint. It was held that a party could not go behind this valuation for the purpose of showing that at the time of the purchase of certain imported goods the value of a foreign coin, as exhibited by the actual rate of exchange, was less than the value as thus ascertained. The court in its opinion observed that—

"\*  \*  \* In the estimation of the value of foreign moneys for the purpose of assessing duties, there must be an end to controversy somewhere. When Congress fixes the value by a general statute, parties must abide by that. When it fixes the value through the agency of official instrumentalities, devised for the purpose of making a nearer approximation to the actual state of things, they must abide by the values so ascertained. If the currency is a standard one, based on coin, the Secretary's proclamation fixes it; if it is a depreciated currency, the par-

ties may have the benefit of a consular certificate. To go behind these and allow an examination by affidavits in every case would put the assessment of duties at sea. It would create utter confusion and uncertainty. *If existing regulations are found to be insufficient, if they lead to inaccurate results, the only remedy is to apply to the President, through the Treasury Department, to change the regulations.* * * "
[Emphasis added.]

The opinion of the court further indicates that such action was taken.

It is the considered opinion of the court that plaintiff's second contention "that the President has attempted by illegal and improper means to remove time limitations from the life of a patent * * " is without merit.

Counsel for the parties have greatly aided the court with their well-considered briefs, which reflect great care, industry, and research. We have given careful consideration to all of the arguments presented but have limited our consideration to those points which we deem are of vital importance.

Based upon the record before us and for the foregoing reasons, we are clearly of the opinion that the collector of customs correctly applied to the facts of the case the law governing his action and properly excluded the subject lighters from entry. The claims in the protests are, therefore, overruled in all respects.

Judgment will issue accordingly.

### On Motion For Retrial.

Per Curiam: The second division of this court rendered its decision and judgment in this case September 30, 1954, overruling plaintiff's protests.

On October 27, 1954, plaintiff filed a timely motion for a retrial.

The case was partly tried before Judge William A. Ekwall at New Orleans where Steven J. Charia appeared as a witness for the plaintiff, and Luka Yurkovich for the defendant. At the close of the trial in New Orleans, the case was transferred to New York, where the hearing was continued before the three members of division two and the case was submitted. At this hearing, Steven J. Charia appeared and gave rebuttal testimony, and the division had an opportunity to observe the bearing, demeanor, and character traits of said witness Charia.

In support of its motion, plaintiff makes the following allegations, *inter alia:*

"That at the trial of the said protests on circuit in New Orleans, Louisiana, on July 9, 1953, before Honorable William A. Ekwall, the Defendant attempted to impeach and discredit the character, reputation and veracity of the only witness for the Plaintiff, Mr. Steven J. Charia, the owner of the S. J. Charia & Co., the Plaintiff herein, through the testimony of one Luka Yurkovich who did testify under oath on record pages 243–249 that said Mr. Charia was not honest and that his reputation was bad.

"At said hearing in New Orleans Judge Ekwall was able to observe personally the bearing, demeanor and character traits of said witness Yurkovich and was in a position to form an opinion about the merits of the attack upon the reputation and veracity of said witness Charia.

"Upon motion by the Defendant, and over the objections of the Plaintiff (Record page 250), and in accordance with Rule 3(r), 40 and 41 of this Court,* this case was subsequently transferred to New York and scheduled for hearing in New York, N. Y. on November 9, 1953, before the Second Division of this Court composed of Judges Charles D. Lawrence, Paul P. Rao, and Morgan Ford, not Judge William A. Ekwall.

* 28 U.S.C.A.

"On October 13, 1953, before said date of hearing at New York (11/9/53) Plaintiff filed a motion for an order by the Chief Judge to assign Judge Ekwall to the Second Division for the further proceedings and decision in this case, which action was made in accordance with Rule 2(c) of this Court as well as under the statutory provision (28 U.S.C. § 254) stating that 'The chief judge may * * * when necessary assign other judges to any division.' Said motion was denied by Judge Webster J. Oliver, Chief Judge, on November 4, 1953.

"Since Judge Ekwall the only judge of the United States Customs Court who personally observed the witness who made the attack upon Steven J. Charia, did not participate in the further action in this case, and since none of the three judges of the Second Division who passed upon and decided the facts and issues raised herein had the benefit of this personal observation on a point involving the credibility of a witness, particularly where such witness was the owner of the Plaintiff concern, Plaintiff claims that he has not had a fair and impartial trial, that he has been harmed, and that he has been denied due process of law in violation of his rights under the Fifth Amendment to the Constitution of the United States of America—See authorities cited in Geo. S. Bush & Co. v. United States, 22 Cust.Ct. 158, C.D. 1175; and United States v. Nugent, 6 Cir., 100 F.2d 215."

■■ An examination of the record discloses that plaintiff did not file an exception to the order of Chief Judge Oliver denying its motion to have Judge Ekwall assigned to the second division, nor at the time of the hearing on November 9, 1953, was any objection made to having the case proceed before the second division. We may add that we know of no procedure whereby another judge may be assigned to a division of three judges.

In connection with plaintiff's contention that "he has not had a fair and impartial trial, that he has been harmed, and that he has been denied due process of law in violation of his rights under the Fifth Amendment," the attention of the court has been invited to "See authorities cited in Geo. S. Bush & Co. v. United States, 22 Cust.Ct. 158, C.D. 1175; and United States v. Nugent [6 Cir.], 100 F.2d 215," but without comment on any of the cases.

This court, in a very able and elaborate opinion in the Bush case, supra (decided May 23, 1949), gave expression to the following views which have an important bearing here—

"* * * It is true that this procedure results in a decision ofttimes by divisions of three judges none of whom have personally seen the witnesses or heard their testimony, but due process of law does not require that the judge or division of judges which makes the findings of fact and renders judgment actually see and hear the witnesses in a case; and, besides, the disadvantages occasioned by such method of procedure are more imaginary than real and are far outweighed by prompt dispatch of the court's business, freedom from unwieldiness of operation, economy of time, effort, and public money saved thereby. That such method of procedure is legally as well as practically justified is demonstrated by the more than 58 years it has been in satisfactory use and its universal acceptance by the bench, bar, legislature, and litigants involved. All that due process requires is that the proceeding or hearing be appropriate, practicable, and reasonable in the particular case. Hagar v. Reclamation Dist., 111 U.S. 701 [4 S.Ct. 663], 28 L.Ed. 569; 12 Am.Jur. p. 303, sec. 608. The Customs Court procedure is appropriate, practicable,

and reasonable. And where a course of procedure has been so long followed by the court, such fact alone argues legislative authority therefor. Tower Manufacturing & Novelty Co. v. United States, 6 Ct.Cust. App. 267, 270, T.D. 35478."

See also Ignazio Ridino v. United States, 61 Treas. Dec. 1006, T.D. 45669 (decided May 17, 1932).

The Nugent case, supra [100 F.2d 216] (decided December 16, 1938), presented an entirely different state of facts from those before us in the instant case. That case arose under the Tucker Act, 28 U.S.C. § 41 (20), and involved the alleged appropriation by the United States of private property. It appears that after the district judge who had tried the case had retired another district judge, acting under a general designation, made findings of fact and conclusions of law based upon the record previously made. The Circuit Court of Appeals, Sixth Circuit, on reviewing the case, cited the following provision of the Tucker Act, 28 U.S.C. § 764—

" 'It shall be the duty of the court to cause a written opinion to be filed in the cause, setting forth the specific findings by the court of the facts therein and the conclusions of the court upon all questions of law involved in the case, and to render judgment thereon. * * *' "

The Circuit Court of Appeals, in finding that the judgment below was invalid, held that the Tucker Act, supra, impliedly required that the same judge who heard the case should make the findings and conclusions, and, further, the mandatory requirement that a written opinion be filed in the case was not met by the meager findings of fact and conclusions of law which were the basis of the trial court's judgment.

From the foregoing, it is apparent that the Nugent case, supra, is clearly distinguishable in fact and in law from the instant case, primarily because the two proceedings are under two very different statutory procedures,[1] and, secondly, that the statutory basis of procedure in the Customs Court "is legally as well as practically justified is demonstrated by the more than 58 years it has been in satisfactory use and its universal acceptance by the bench, bar, legislature, and litigants involved," as was pointed out in the Bush case, supra.

From time immemorial, so far as the United States Customs Court and its predecessor, the Board of General Appraisers, are concerned, by virtue of the structure of this court and its duties at New York and on circuit, the situation prevailing here as to the hearing and the determination of the present controversy has obtained in hundreds of cases.

There is no basis for plaintiff's assumption, and it is not the fact, that the decision and judgment of this court in the instant case were predicated on testimony favorable or unfavorable to the character, reputation, or credibility of said Charia or of defendant's witness Yurkovich. No reference thereto is contained either in the briefs filed in the case or in the decision of the court.

Upon a full consideration of the motion to set aside and vacate the decision and judgment of this court in the above three protests and for a retrial, filed by Tompkins & Tompkins, attorneys for the plaintiff, and the affidavit of Allerton deC. Tompkins in support thereof, and the memorandum of Warren E. Burger, Assistant Attorney General, Civil Division, in opposition thereto, and upon all other papers and proceedings had herein and due deliberation having been had thereon, it is hereby

Ordered, Adjudged, and Decreed that the plaintiff's aforesaid motion be, and the same hereby is, denied.

1. Cf. 28 U.S.C. § 254.